**INTHEUNITEDSTATESDISTRICTCOURT**
**FORDISTRICTOFNEWJERSEY**

|  |  |  |
|---|---|---|
| U.S.BANKNATIONALASSOCIATION, ASTRUSTEE,ASSUCCESSOR-IN- INTERESTTOBANKOFAMERICA, NATIONALASSOCIATION,AS TRUSTEE,ASSUCCESSOR-BY- MERGERTOLASALLEBANKN.A. ASTRUSTEEFORTHEREGISTERED HOLDERSOFBEARSTEARNS COMMERCIALMORTGAGE SECURITIESINC.COMMERCIAL MORTGAGEPASS-THROUGH CERTIFICATES,SERIES2006-TOP22, | : : : : : : : : : : : : : | |
| Plaintiff, | : : | |
| v. | : : | No.2:12-cv-06808-SDW-MCA |
| MIDRIDGE17ASSOCIATES,LLC, | : : | |
| Defendant. | : | |

**ORDERAPPOINTINGRECEIVER**

ThismatterisbeforetheCourtonthePetitionfor     AppointmentofReceiverfiledbythe

Plaintiff,U.S.BankNationalAssociation,asTrust     ee,assuccessor-in-interesttoBankof

America,NationalAssociation,asTrustee,assucce     ssor-by-mergertoLaSalleBankN.A.as

TrusteefortheRegisteredHoldersofBearStearns     CommercialMortgageSecuritiesInc.

CommercialMortgagePass-ThroughCertificates,Seri     es2006-TOP22("Plaintiff"),andrelated

totherealandpersonalpropertylocatedat501No     rthStateRoute17South,Boroughof

Paramus,BergenCounty,NewJerseyasmorefullyde     scribedinExhibit"A"hereto(the

"Property").ThisOrdershallbeeffectiveasofAp     ril16,2013.

## FINDINGS OF FACT

1.      On or about January 31, 2006, Bear Stearns Commercial Mortgage, Inc. ("Original Lender") made a loan to Midridge 17 Associates, LLC ("Defendant") in the amount of $12,290,000.00 (the "Loan") pursuant to the terms and conditions of that certain Promissory Note (the "Note"). A copy of the Note is attached to Plaintiff's Complaint as Exhibit "A".

2.      To secure payment of the sums due under the Note, Defendant executed to Mortgage Electronic Registration Systems, Inc. ("MERS"), solely in its capacity an nominee for Original Lender, that certain Mortgage and Security Agreement (the "Mortgage") dated January 31, 2006, recorded on February 2, 2006 in the Office of the Clerk of Bergen County, New Jersey ("Clerk's Office") in Book 15492, Page 342. A copy of the Mortgage is attached to Plaintiff's Complaint as Exhibit "B".

3.      To further secure payment of the sums due under the Note, Defendant entered into that certain Assignment Of Leases And Rents (the "Lease Assignment") dated January 31, 2006, which Lease Assignment was recorded on February 2, 2006 in the Clerk's Office in Book 15492, Page 399. A copy of the Lease Assignment is attached to Plaintiff's Complaint as Exhibit "D".

4.      Plaintiff is in possession of and is the true holder of the Note.

5.      The Mortgage was assigned to Plaintiff pursuant to that certain Assignment of Mortgage and Security Agreement (the "Assignment of Mortgage"), which has been sent the Clerk's Office for recording. The Lease Assignment was assigned to Plaintiff herein pursuant to that certain Assignment of Assignment of Leases and Rents (the "Assignment of Lease Assignment"), which has been sent the Clerk's Office for recording. True and correct copies of the Assignment of Mortgage and Assignment of Lease Assignment are attached to Plaintiff's Complaint as Exhibits "F" and "G", respectively.

6.      The Property consists of land with all improvements     , furniture, fixtures, equipment, easements, appurtenances, intangibles an    d personalty thereon, together with any and all other property and things identified in the Mor        tgage.

7.      The Mortgage provides, in Section 11.1, that in the        event of a default or defaults by Defendant thereunder, the Plaintiff:

> may take such action, without notice or demand, as        it deems advisable to protect and enforce its rights against [Defendant]      and in and to the Property, including, but not limited to, the follow        ing actions…(g) apply for the appointment of a receiver, trustee, liquida       tor or conservator of the Property, without notice and without regard for the        adequacy of the security for the Debt and without regard for the so        lvency of [Defendant] or any person, firm or other entity liable for the pay        ment of the Debt.

8.      The Defendant is in default of its obligations unde        r the Note and Mortgage for failing to pay sums due thereunder. As a result of        Defendant's defaults, Plaintiff's security in the Property is threatened.

9.      The Receiver is NAI James E. Hanson ("Receiver").        The Receiver operates under a license agreement with New America Network, Inc.,        d/b/a NAI Global ("NAI Global"). NAI Global is a wholly owned subsidiary of C-III Capita        l Partners LLC. C-III Asset Management LLC, the Special Servicer for the Plaintiff, is als        o a wholly owned subsidiary of C-III Capital Partners LLC. The license agreement is a marketing        agreement that allows the Receiver to use certain branding material, but NAI Global has no di        rect control over the day-to-day business of the Receiver. The Receiver will pay to NAI Global        a percentage of fees it earns in connection with the leasing and management of the Property in        accordance with the terms of its existing license agreement.

**ACCORDINGLY, IT IS HEREBY ORDERED AND DECREED AS FOLLOWS:**

1.      Receiver is hereby appointed Receiver over the Property with all of the powers and obligations set forth herein.

2.      Until further notice of this Court, all persons or entities, including but not limited to tenants in possession of the Property or any portion thereof, and any persons liable therefore, shall pay to the Receiver all rents, income, or other amounts now due and unpaid and all rents, income, or other amounts hereafter to become due on their respective tenancies and Defendant, either directly or through its agents, servants, representatives and attorneys, is hereby enjoined and restrained from collecting any rents or fees from or incident to the Property and from interfering in any manner with the Property.

3.      The Receiver shall have possession of the Property, including the real property, personal property and all other property subject to the mortgage and shall have full power and authority to operate, manage and conserve such property. Without limiting the foregoing, the Receiver shall have the power and authority, immediately upon the entry of this Order, to:

(a)      with Plaintiff's written approval on notice to Defendant, secure tenants and execute leases for the Property, the duration and terms of which are reasonable and customary for the type of use involved, and such leases shall have the same effect as if made by the Defendant;

(b)      collect the rents, issues, account receivables, insurance claim proceeds, real estate tax refunds, utility deposits, security deposits and profits from the Property from any time period;

(c)      insure the Property against loss by fire or other casualty, which may include, but not be limited to, the following coverages, from any insurer or prospective insurer:

-5-

property, liability (and excess liability), auto li      ability, workers compensation, EPLI, employer liability, employee dishonesty, business interrupti    on, boiler and machinery, builders risk, construction bonding, environmental, terrorism, oth    er bonding professional liability and errors and omissions;

(d)      employ construction managers, general contractors,      subcontractors, architects, engineers, consultants, title companies    , environmental consultants, asset managers, property managers, leasing agents, administrative s    upport, attorneys, security companies, custodians, janitors, maintenance workers, repairma    n/contractors, assistants, agents, accountants and other employees reasonably deemed necessary, ap      propriate, or desirable to assist the Receiver in diligently executing the duties imposed      upon the Receiver by this Order including, but not limited to, the maintenance and operation o      f the Property;

(e)      pay taxes which may have been or may be levied agai      nst the Property;

(f)      establish bank accounts, including having the right      and power to (i) require said bank to convert the account name to su      ch name as requested by the Receiver; (ii) modify the authorized signors on the account to tho      se persons requested by the Receiver; (iii) delete any signors to the account as requested by t      he Receiver; and (iv) ensure compliance with other similar requests made by the Receiver, includ      ing but not limited to using the Defendant's TIN (FEIN or SSN) while naming the account as rec      eivership account;

(g)      receive all rents and proceeds from the Property (w      hether historical, current or prospective), including, but not limited      to, security deposits, rents, accounts receivable, insurance claim proceeds, real estate t      ax refunds, utility deposits, security deposits, and earnest money deposits presently in the possess      ion of the Defendant and/or its agents;

(h)     make all repairs, declarations, renewals, replaceme    nts, alterations, additions, betterments, and improvements in connect    ion with the Property as may seem judicious to the Receiver, however, Receiver must obtain Plai    ntiff's written approval for any such costs exceeding $5,000.00;

(i)     hire or retain any agents necessary or appropriate    to do any of the duties listed above without further approval of this Court    , including, but not limited to, accountants, attorneys, environmental consultants and personnel,    brokers, leasing agents, property managers, maintenance personnel, and/or security personnel;

(j)     insure and reinsure the Receiver, his agents, and/o    r the Property against all risks incidental to the Receiver's possession, oper    ation, and management thereof. The Receiver may secure new insurance policies, if necessary and    finance them;

(k)     terminate or enter into vendor or or other contracts p    ertaining to the Property as Receiver may determine in its sole judgment are    necessary, with no further obligation or liability (including not having to pay any terminat    ion fees) under any terminated contract;

(l)     procure or maintain utility services for the Proper    ty, to include but not be limited to gas/steam, electric, water, sewer, trash    , phone, cable, internet, and snow removal, without suffering, regardless of the internal polic    ies of any utility provider, the termination of such service or refusal to authorize any new accoun    t based upon previous unpaid bills for services rendered prior to the appointment of the R    eceiver or during the term of the Receiver, with any and all accounts to be opened or transferr    ed to the Receiver's name, but using the existing Borrower's account information (including    the tax identification number (TIN) of the Borrower). Further, the Receiver is not responsible    for any utility bills accruing prior to its appointment and the Receiver is not personally resp    onsible for any bills during the Receivership;

-6-

(m)     take possession of all cash or funds belonging to o          r for the benefit of Defendant in bank accounts associated with the Prop          erty (no matter from what time period), whetherinthenameoftheProperty,Defendantori          tsagentsoremployees,andtoopen,transfer andchangeallsuchbankaccountsintothenameof          theReceiver;

(n)     institute, prosecute, defend and/or settle such leg          al proceedings as the Receiverdeemsnecessaryrelatingtothecareorpo          ssessionofthePropertyandtocollectany suchsumswhichmaybeduefromanysourcerelating          touseoftheProperty;and

(o)     take such other actions as may be reasonably necess          ary to conserve the Propertyandotherpropertysubjecttothemortgage          ,orasotherwiseauthorizedbytheCourt.

4.      The Receiver is authorized, without further leave o          f the Court, to defend or institute and prosecute suits or summary proceeding          s related to the Property or the duties imposed upon the Receiver by this Order, including          but not limited to proceedings (a) for the collection of rents, income, and other amounts (whi          ch include tenants who have vacated their space),(b)fortheremovalof(i)anytenantorte          nantsindefault(whetherforfailuretopayrent or other amounts when due, or otherwise, including          violation of the Property rules) (ii) any tenant or tenants whose terms have expired and have          not been renewed, or (iii) any other person(s)orentity(ies)unlawfullyinpossessiono          ftheProperty,or(c)otherwiserelatedtothe PropertyorthedutiesimposedupontheReceiverby          thisOrder.ThisOrdershallactasnoticeto alltenantsofthePropertythattheloanonthisp          ropertyisindefaultandthePropertyisinthe foreclosureprocess.

5.      The Receiver shall manage the Property as would a p          rudent person, taking into accounttheeffectoftheReceiver'smanagementon          theinterestofthePlaintiffasmortgageeand

-8-

Defendant as mortgagor.  To the extent the Receiver       receives sufficient receipts from the Property, and except to the extent ordered otherwis      e by the Court, the Receiver:

        (a)     shall maintain the existing casualty and liability       insurance required in accordance with the Mortgage or applicable to the P       roperty at the time the Receiver took possession, or shall find more cost-effective repla       cement insurance of comparable coverage with replacement insurers, and, to that extent, existing       insurers of the Property are hereby ordered to release claims history on existing policies to Rece       iver;

        (b)     shall use reasonable efforts to maintain the Proper       ty in at least the same condition as existed at the time the Receiver took       possession, excepting reasonable wear and tear and damage by any casualty;

        (c)     shall apply receipts to payment of ordinary operati       ng expenses, including utilities, rents and other expenses of management;

        (d)     may pay the amounts due under the Mortgage provided       sufficient funds are available after reasonable reserves;

        (e)     may make other repairs and improvements necessary t       o comply with building, life-safety and other similar codes or wi       th such other contractual obligations as the Receiver deems affect the Property, however, Receiv       er must obtain Plaintiff's written approval for any such costs exceeding $5,000.00;

        (f)     may hold receipts as reserves reasonably required f       or the foregoing purposes;

        (g)     may take such other actions as may be reasonably ne       cessary to conserve the Property, or as otherwise authorized by the cou       rt, provided sufficient funds are available;

(h)      may also, with prior Court approval, pay any and al      l other outstanding obligationstosuppliersincurredinarm'slengtht      ransactionswho,priortotheentryofthisOrder, suppliedmaterials,businesssuppliesand/orlabor      toorforthebenefitoftheProperty,butonlyto theextenttheReceivershalldetermine,inhissol      ejudgment,thatitisprudenttodosoinorder to maintain the business relationships with such su      ppliers for the benefit of the Property, providedsufficientfundsareavailablefromthePr      operty,andwithout,bysodoing,makingthe Receiverliableforanyotherantecedentdebtsrela      tingtotheProperty.

6.      To the extent the Receiver decides to continue the      services of any current employees,agentsorotherpersonnelwithrespectt      otheProperty,neithertheReceivernorany personorentityengagedbytheReceiverhereunder      shallbeliableforanyclaimsofanynature whatsoeverofsuchemployees,agents,orotherpers      onnelthatarosepriortothedateandtimeof theentryofthisOrder,whichclaimsinclude,but      arenotlimitedto,unpaidbutaccruedwages, unpaid but accrued sick time, unpaid but accrued va      cation time, unpaid but accrued overtime and/or any and all other liabilities related to une      mployment and/or worker's compensation claims.

7.      The liability of the Receiver is and shall be limit      ed to the assets of the receivership, and neither the Receiver nor any pers      on or entity engaged by the Receiver hereundershallbepersonallyliableforanydulya      uthorizedactionsproperlyandlawfullytaken pursuanttothisOrder.

8.      Withinfive(5)calendardaysoftheeffectivedate      ofthisOrderDefendantand/or itsagentsshallprovideormakeavailabletotheR      eceiverthefollowing,totheextentsuchitems andthingsexist:

(a)      Defendant'sfederalemployeridentificationnumbers     ;

-9-

(b)     Copiesofanyandallservicecontractspertaining          totheProperty;

(c)     Copiesofanyandallleases,leaseabstracts,purc          haseagreementsandthe likepertainingtotheProperty;

(d)     Allopeninvoicesforservicesorgoodsrelatingto          theProperty;

(e)     Acopyofthe2011-2012year-endfinancialstatemen          tsand2013year-to-date(andmonthbymonthdetail)inbothhardcopy          andelectronicformat:balancesheet,income statement,accountsreceivable(andreceivables/arr     earagesaging),operatingstatements,current yearbudget,sourcesandusesofcashflow,detaile          drentroll,accountspayable,checkregister, securitydepositlisting,trialbalance,generalle     dger,contractorstatements,lienwaivers,sworn ownerstatements,constructiondraws,bankreconcil     iationsandbankstatement;

(f)     A complete set of keys (including all masters) and        all security and/or access codes and/or cards to the Property and a sch          edule (including full contact information) identifying each person or entity (including securi     ty companies, municipal/governmental agenciesandutilitycompanies),whocurrentlyhas          oneormorekeysand/oraccesscardstothe Propertyorwhohasknowledgeofanyaccesscodest          hereto;

(g)     Inadditiontothematerialsidentifiedinsubsecti          on(e)above,anyandall records and information Defendant may have concerni       ng the Property, including without limitation all written and electronic books, record       s, correspondence, and other information related to (i) any agreements to which the Property       is or may be subject; (ii) any amounts received from the tenants of the Property, from the        time Defendant took ownership of the PropertytothedateofentryofthisOrder;(iii)          allliensorotherencumbrancesontheProperty; (iv)propertytaxes,assessmentsandrelatedappeal     s;(v)insuranceofalltypesforDefendantand tenants(includingbutnotlimitedtoliability,pr          operty,excessliability,autoliability,boileran          d

machinery, business interruption, professional liab    ility, employee dishonesty, builders risk,
construction related insurance and workmen's compen     sation) related to the Property; (vi) all
maintenance and service contracts; (vii) all invoic     es for services at the Property; (viii) all tenant
files, including leases, lease abstracts, purchase      agreements and sample leases from the time
Defendant took ownership of the Property to the dat      e of entry of this Order; (ix) a current and
accurate copy of all electronic information for ite     ms related to accounting including tenant
escalations/reconciliations from the time Defendant     took ownership of the Property to the date of
entry of this Order; (x) a schedule of all capital      expenditures put into the Property since
Defendant assumed ownership of the Property and any     items of deferred maintenance and capital
currently required; (xi) a full and complete rent r     oll including but not limited to
schedules/information related to tenant security de     posits, encumbrances, options, escalations,
rents and term; (xii) all current or the most recen     t copy of an ALTA survey, Phase I and Phase II
environmental reports, traffic studies, demographic     studies, physical condition/engineering
reports, building and life-safety code violations,     zoning code information related to the Property
and appraisal; (xiii) all marketing information (in     hard copy and electronic format) including but
not limited to brochures, photographs (including ae     rial), maps, signage, and (xiv) all other
aspects of the Property records that are or may be      necessary or pertinent to the Receiver's
management, maintenance, operation and/or sale of t     he Property.

(h)     Any and all insurance loss histories and/or claims     on the Property;

(i)     Any and all other documents relating to the Propert     y as requested by the
Receiver; and

(j)     All property and all other things of value associat     ed with use, operation
and maintenance of the Property.

9.      Defendant shall at all times after the entry of thi        s Order provide full cooperation to the Receiver for carrying out its duties hereund        er, and timely respond to all reasonable requests made by the Receiver. Defendant's obligati        on to use best efforts to provide or make available to the Receiver the items and things iden        tified herein shall be continuing.

10.      So long as any part of the Property remains in the        Receiver's possession, the Receiver is directed to prepare and file with the C        ourt, within sixty (60) days after the last day of the first month of the entry of this Order and no l        ess frequently than every month thereafter, and within ninety (90) days after termination of the re        ceivership, a full and complete report, under oath, setting forth receipts and disbursements and        reporting acts and transactions regarding the execution of the trust of its office as Receiver, i        ncluding a current inventory of the funds, assets, and property remaining in the receivership, interes        t in and claims against the same, and all debts and obligations contracted and expenditures made.        The Receiver is further directed to serve copies of each such report on the attorneys of reco        rd for Plaintiff, Defendant, and any other party who submits a written request to the Court and the        Receiver to be served with copies of such requests.

11.      The Receiver may at any time file a motion requesti        ng that it be exonerated, discharged and released from all its appointments a        s Receiver.

12.      The Receiver shall not have any responsibility for        the preparation or filing of any tax return of any kind for the Defendant but shall        provide the Defendant with information within Receiver's possession so that Defendant may prepare        and file any such returns.

13.      Neither the Defendant nor anyone associated therewi        th or acting under the Defendant's authority or control shall:

(a)      possess or manage the Property in any way;

-12-

(b)      collect, withdraw or transfer, in any way, funds or       revenue derived from operation of the Property;

(c)      remove or destroy any property from the Property;

(d)      terminate or cause to be terminated any license, pe      rmit, lease, contractor agreement relating to the Property; or

(e)      otherwise interfere with Receiver's possession or o      peration of the Property.

14.      Receipts received from operation of the real estate       by the Receiver shall be applied in the following order of priority after pa       yment of expenses associated with the Property:

(a)      to payment and reimbursement of the Receiver for al       l fees, costs and expenses incurred by the Receiver or the Receiver's       agents/delegates (including management fees/leasing commissions/reimbursables/construction  management fees) in connection with all Property related expenses incurred by the Receiver;

(b)      to payment of authorized insurance premiums;

(c)      the balance, if any, shall be held or disbursed as       ordered by the Court.

15.      Defendant, its agents, and employees, shall turn ov       er to the Receiver, within five (5) business days from the effective date of this O       rder, all sums in existence on the date hereof that are related or pertain to, or are derived from       the Property, including, but not limited to, (a) all cash in hand, (b) all cash equivalents and nego       tiable instruments (such as checks, notes, drafts or other related documents or instruments), and (c)       all sums held in accounts in any financial institutions, including, without limitation, (i) te       nant/lessee security deposits, (ii) deposits held i       n escrow for any purpose, such as for payment of real       estate taxes and insurance premiums, (iii) proceeds of insurance maintained for, or pertaining       to, the Property, (iv) rent or prepaid rent, (v)

-14-

funds designated or intended for capital improvemen      ts, repairs, or renovations to, or in connectionwith,theProperty,and(vi)allothers          umsofanykindrelatingtotheuse,enjoyment, possession,improvement,oroccupancyofallorany          portionoftheProperty.

16.      The Receiver shall, upon the entry of judgment in m        ortgage foreclosure, be authorizedtoexposethePropertytopublicforeclo        suresalepursuantto28U.S.C.§2001,etseq., andshallthereafterpasstitletothePropertyto        thesuccessfulbidder.

17.      TheReceivershallpostabondof$50,000.00within          tendaysofthedateofentry ofthisOrder.

18.      TheReceivershallbecompensatedforitsservices          hereunderconsistentwiththe fee schedule attached hereto and marked as Exhibit        "B" to this Order. However, the Receiver shallnotincurexpensesinexcessof$2,500.00/mon        thwithoutpriorwrittenauthorizationfrom Plaintiff. ThefeeschedulesetforthonExhibit"          B"shallencompassalloftheReceiver'sduties pursuanttothisorder,includingexposingtheMort        gagedPremisestoaforeclosuresale.

**BYTHECOURT:**

Dated: _____          _____

**EXHIBIT A**

ALLTHATCERTAINLOT,PARCELORTRACTOFLAND,SITU ATEANDLYINGIN THEBOROUGHOFPARAMUS,COUNTYOFBERGENANDSTATE OFNEWJERSEY BEINGMOREPARTICULARLYDESCRIBEDASFOLLOWS:

BEGINNINGATAPOINTINTHEWESTERLYLINEOFNEWJE RSEYSTATE HIGHWAYROUTE17,SAIDPOINTBEINGDISTANT600.00F EETNORTHERLY ALONGSAIDWESTERLYLINEOFNEWJERSEYSTATEHIGHWA YROUTE17ONA CURVETOTHELEFTOFRADIUS11,399.19FEETFROMTHE NORTHERLYLINE OFLANDBELONGINGTOROUNDERSCAFE,INC.,WHICHNOR THERLYLINEOF ROUNDERSCAFÉ,INC.,INTERSECTSSAIDLINEOFNEWJE RSEYSTATEHIGHWAY ROUTE17,ATTHESAMEPOINTASTHEEASTERLYLINEOF THEFIRSTTRACTIN DEEDBYJENNIEFULLERTOSISTERSOFCHARITYOFST. ELIZABETHDATED SEPTEMBER17,1912RECORDEDINTHEBERGENCOUNTYCL ERK'SOFFICEIN DEEDBOOK831PAGE528;RUNNINGTHENCE

1)SOUTH80DEGREES11MINUTES15SECONDSWEST,PAR ALLELWITHTHE NORTHERLYLINEOFSAIDLANDSOFROUNDERSCAFE,INC. 311.92FEETTOA POINT;THENCE
2)NORTH14DEGREES20MINUTES35SECONDSWEST,445 .88FEETTOST. ANDREWSBROOK;THENCE
3)NORTH48DEGREES10MINUTESEAST.131.62FEETAL ONGSAIDBROOKTOA POINT;THENCE
4)NORTH56DEGREES38MINUTES15SECONDSEAST,185 FEETTOTHESAID WESTERLYLINEOFNEWJERSEYSTATEHIGHWAYROUTE17; THENCE
5)SOUTH17DEGREES6MINUTES45SECONDSEAST,ALON GSAIDLINEOFNEW JERSEYSTATEHIGHWAYROUTE17,131FEETTOAPOINT OFCURVATUREIN SAIDLINE;THENCE
6)SOUTHERLY,STILLALONGTHEWESTERLYLINEOFNEW JERSEYSTATE HIGHWAYROUTE17,ONACURVETOTHERIGHTOFRADIUS 11,399.19FEET,AN ARCDISTANCEOF461.19FEETTOTHEPOINTORPLACEO FBEGINNING.

BEINGALSODESCRIBEDASFOLLOWS:

BEGINNINGATAPOINTINTHEWESTERLYLINEOFNEWJE RSEYSTATE HIGHWAYROUTE17SOUTHBOUND(120FEETWIDE),WHERE THESAMEIS INTERSECTEDBYTHESOUTHERLYLINEOFLANDSNOWORF ORMERLYOF LEVITZSLPARAMUS,L.L.C.,ASDESCRIBEDINDEEDBOO K8177PAGE763 RECORDEDJUNE16TH,1999INTHEOFFICEOFTHEBERGE NCOUNTYCLERK,AND COMMONLYKNOWNASLOT1INBLOCK5103.ANDFROMSAI DPOINTOF BEGINNINGRUNNING;THENCE

1)SOUTH17DEGREES06MINUTES45SECONDSEAST.ALO NGSAIDWESTERLY LINEOFNEWJERSEYSTATEIHIGHWAYROUTE17SOUTHBO UND.131.00FEETTO APOINTOFCURVATURE,THENCE

2)ONACURVETOTHERIGHTOFRADIUS11,399.19FEET      .ANARCDISTANCEOF 456.76FEETALONGTHESAMETOAPOINTINTHENORTHE      RLYLINEOFLANDS NOWORFORMERLYOFTORINOREALTY,INC.ASDESCRIBED      INDEEDBOOK6711 PAGE665;THENCE

3)SOUTH80DEGREES14MINUTES15SECONDSWEAL,311      .92FEETALONGTHE SAMETOAPOINTINTHEEASTERLYLINEOFASUBDIVISI      ONPLATENTITLED, "FINALSUBDIVISIONPLAT,DEEDRAILFARMS."SAIDMA      PBEINGFILEDINTHE BERGENCOUNTYCLERK'SOFFICEONJULY20,1967ASMA      PNO.6608;THENCE

4)NORTH14DEGREES20MINUTES35SECONDSWEST,441      .43FEELALONGTHE SAMETOAPOINTINTHEAFOREMENTIONEDSOUTHERLYLIN      EOFLANDSNOW ORFORMERLYOFLEVITZSLPARAMUS,L.L.C.,THENCE

5)NORTH48DEGREES10MINUTES00SECONDSEAST,131      .62FEETALONGTHE SAMETOABENDPOINT,ANDTHENCE

6)NORTH56DEGREES38MINUTES15SECONDSEAST.185      .00FEETALONGTHE SAMETOAPOINTINTHEAFOREMENTIONEDWESTERLYLINE      OFNEWJERSEY STATEHIGHWAYROUTE17SOUTHBOUNDANDTOTHEPOINT      ANDPLACEOF BEGINNING.

BEINGFURTHERDESCRIBEDINACCORDANCEWITHASURVEY      MADEBY WILLIAMJ.FIORE,INC.,DATED11/14/05.

BEGINNINGATAPOINTINTHEWESTERLYLINEOFNEWJE      RSEYSTATE HIGHWAYROUTENO.17(SOUTHBOUND)(120FEET),SAID      POINTBEINGTHE COMMONCORNEROFLOT1,BLOCK5103ANDTHELOT3.B      LOCK5107,AS ILLUSTRATEDONTHEAFOREMENTIONEDTAXMAPRUNNING;      THENCE

1)ALONGTHEWESTERLYLINEOFNEWJERSEYSTATEHIGH      WAYROUTENO.17. SOUTH17DEGREES06MINUTES45SECONDSEAST131.00      FEETTOAPOINTOF CURVATURE,THENCE

2)CONTINUINGALONGTHEWESTERLYLINEOFNEWJERSEY      STATEHIGHWAY ROUTENO.17,INASOUTHERLYDIRECTIONTHOUGHACUR      VEBEARINGTOTHE RIGHT,HAVINGARADIUSOF11,399.19FEETANDALEN      GTHOF456.76FEETTOA POINT;THENCE

3)SOUTH80DEGREES14MINUTES15SECONDSWEST311.      92FEETTOAPOINT; THENCE

4)NORTH14DEGREES20MINUTES35SECONDSWEST441.      43FEETTOAPOINT; THENCE

5)NORTH48DEGREES10MINUTES00SECONDSEAST131.      62FEETTOAPOINT; THENCE

6)NORTH56DEGREES38MINUTES15SECONDSEAST185.      00FEETTOTHEPOINT ORPLACEOFBEGINNING.

FORINFORMATIONALPURPOSESONLY;ALSOKNOWNASLOT      3INBLOCK5107 ONTHETAXMAPOFTHEBOROUGHOFPARAMUS..

-17-

FORINFORMATIONALPURPOSESONLY;BEINGCOMMONLYKNO    WNAS501 ROUTE17,PARAMUS,NJ07652.

PROPERTYADDRESS:501NORTHSTATEROUTE17SOUTH,P    ARAMUS,NEW JERSEY07675.

-17-

**EXHIBIT B**

**ReceiverFee**
- Arateof$175.00perhour,plusanyadditionalser        vicesasrequired.

**LeasingFees**
- TheLeasingcommissionforanynewleaselessthan        5,000sq.ft.shallbeequalto5%. Anyleasegreaterthan5,000sq.ft.shallbe4%.
- Leasingcommissionsforexpansionsand/orrenewals      ofexistingtenantsshallbe2%.
- Leasingcommissionsonanyrenewalsregardinganyn       ewleasesshallbe4%.

**PropertyManagementFees**
- Themonthlypropertymanagementwillbethegreates      tof4%ofthegrossmonthly collectionsatthepropertyor$3,595.00.Thisfee        includestheallocatedcostsoftheoff-sitepropertymanagerandaccountant.
- ForManager'ssupervisionofcapitalimprovementsa      ndLandlordprovidedtenant improvements,thefeepayabletoManagershallbea       sfollows:

| IncrementalCostofWork | PercentageFee |
|---|---|
| $0-$5,000 | Free |
| $5,001-$100,000 | 5% |
| $100,001-$250,000 | 3% |
| $250,001-$500,000 | 1% |
| $500,000andup | Negotiated |

Example:Fora$300,000improvement,thefeewould       be$9,750calculatedasfollows:$0forthe 1st$5,000ofwork;$4,750(5%)forthenext$95,00        0ofwork;$4,500(3%)forthenext $150,000ofworkand$500(1%)forthefinal$50,00       0ofwork.

**Reimbursables**
- MileageshallbereimbursedperIRSguidelines.Pos      tage,expressdeliverychargesand bankfeesshallbereimbursedatactualcost.